MARÍA ANGELA EMANUELLI, demandante y apelante, *v.* SEGUNDO CADIERNO y esposa, CARLOTA GÉIGEL DE CADIERNO, demandados y apelados.

Núm. 6786.—*Sometido:* Febrero 4, 1936. *Resuelto:* Junio 3, 1936.

*J. J. Ortiz Alibrán,* abogado de la apelante; *Monserrat & Monserrat* y *J. M. Calderón, Jr.,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un pleito sobre resolución de contrato y daños y perjuicios iniciado por María Ángela Emanuelli contra Segundo Cadierno y su esposa, fallado por la corte del Distrito en contra de la demandante sin especial condenación de costas.

El día 1 de febrero de 1927 por escritura pública los demandados vendieron a Emilio H. Amy y a su esposa la demandante dos solares situados en Hato Rey, Río Piedras, uno, el número 1, de 606 metros cuadrados, con frente a la carretera central, y otro, el número 2, contiguo al número 1 de 560 metros cuadrados. El precio del contrato fué el de $4,664, de los cuales corresponden $2,240 al solar núm. 1 y $2,424 al núm. 2. Se pagaron $2,664 de contado, quedando aplazados $2,000 que se satisficieron en junio 9, 1928.

En la escritura de venta se hizo constar:

"6. Don Segundo Cadierno Rodríguez por sí y a nombre y en representación de su mandante doña Carlota Géigel de Cadierno se obliga en la más solemne forma en derecho a la evicción y saneamiento.—7. Los compradores esposos don Emilio H. Amy y doña Ángeles Emanuelli de Amy, aceptan esta escritura en los términos en que está redactada, manifestando además que la misma está de acuerdo con sus instrucciones sobre el particular; bastando este otorgamiento en señal de formal toma de posesión."

El matrimonio Amy-Emanuelli se disolvió por sentencia de divorcio, y por escritura de liquidación de bienes gananciales otorgada en marzo 15, 1930, los solares se adjudicaron a la esposa, la demandante. La compra se había verificado a instancias de ésta para fabricar una casa residencial. Disuelto el matrimonio, como la demandante no contara con suficientes medios para la fábrica, decidió vender los solares y al efecto mandó colocar un letrero sobre ellos anunciando la venta. Quitaron el anuncio y vuelto a colocar lo quitaron de nuevo, alegando "dos americanos, el esposo y la señora" que eran dueños del solar. "Desde entonces", dice la de-

mandante, declarando en el juicio, "empecé a hacer gestiones para que el señor Cadierno hiciera algo conmigo puesto que habían impedido que yo tomase posesión del solar. . . . Al encontrarme que ese solar no era del señor Cadierno ni mío entonces yo le dije que me entregase mi dinero y mis intereses, porque ya yo no iba a fabricar. . . . El señor Cadierno empezó a decirme que tuviese calma que él iba a buscar el dinero; que él me iba a entregar mi dinero, y me ha estado entreteniendo así."

La declaración de la demandante está corroborada por la de su hermano Miguel A. Emanuelli, por la de su abogado y por prueba documental creditiva de que el solar con frente a la carretera o sea el número uno había sido vendido por escritura pública de 28 de abril de 1913 por José D. Riera a María Ruff y por ésta a Walter D. Beecher y a su esposa Eva Lytle Beecher el 4 de mayo de 1915 por escritura pública en esa fecha otorgada. Esas ventas constan inscritas en el Registro de la Propiedad en los años 1913 y 1915. Al margen de la inscripción de 1915 hay una nota puesta en septiembre 12, 1916, que dice:

"Consumada a favor de Walter D. Beecher y su esposa Eva Lytle Beecher la venta a que se refiere la inscripción del frente, por haber transcurrido el plazo fijado según dicha inscripción sin que la vendedora Doña María Ruff haya hecho uso del derecho de retracto que se reservó, habiéndose solicitado esta consumación."

Ésa es la realidad de las cosas, admitida por el propio demandado según surge de la declaración del abogado de la demandante, como sigue:

"La señora Emanuelli me encomendó el 26 de julio de 1932, que la representase en este asunto que tenía pendiente con el señor Cadierno. Siguiendo la costumbre que he seguido siempre, de antes de presentar una demanda hacer una gestión amistosa para ver si es posible llevar a las partes a un entendido y, sobre todo, tratándose de personas amigas como el señor Cadierno, cité al señor Cadierno a una entrevista. Por fin fuí a verle a su despacho y habla-

mos sobre el particular y le formulé verbalmente la reclamación que contra él tenía o tiene la señora Emanuelli, manifestándole que había hecho un estudio del Registro de la Propiedad y que de este registro aparecía. . . . El señor Cadierno reconoció no una vez, sino todas las veces que me entrevisté con él, que fueron tres o cuatro veces, primero, que el solar ese no era de él, que a él se lo habían vendido después de haber sido ya vendido a la señora Ruff, quien más tarde lo vendió al señor Beecher. El señor Cadierno alegaba que no había responsabilidad por parte de él puesto que a él le habían vendido una cosa que no era del vendedor y que él la había vendido igualmente a mi cliente,—la señora Emanuelli. Terminó el señor Cadierno diciéndome que él estaba dispuesto a llegar a un arreglo y a un entendido a base de devolverle a esta señora su dinero pero que él estaba sumamente apremiado de fondos porque tenía su dinero comprometido en el Banco Popular; que había tenido que contribuir con una gran suma para abrir de nuevo ese Banco, pero que tan pronto se abriese el Banco y él estuviese en condiciones, me haría una proposición para el arreglo definitivo de esta cuestión, suplicándome que no interpusiese una demanda; que lo aguardase, como lo aguardé, hasta el mes de febrero. Yo pasé el mes de noviembre, diciembre y enero en los Estados Unidos. A mi regreso en el mes de febrero volví a ver al señor Cadierno. Me volvió a hacer las mismas ofertas, con igual súplica, y teniendo yo que regresar a los Estados Unidos a principios de marzo, volví a verlo antes de embarcar. El vapor salía el jueves y el señor Cadierno me ofreció que el miércoles a más tardar transaríamos el asunto. Llegó el jueves por la mañana sin transacción ni oferta de ninguna clase, concreta o definitiva, y entonces entregué mis notas y cambié impresiones con el compañero Ortiz Alibrán, dejándole encargado que presentase la demanda. Después de interpuesta esta demanda volví a ver al señor Cadierno; volví a hacer gestiones con él para transar el asunto antes de tener necesidad de llegar al juicio. El señor Cadierno me suplicó en el término pasado y antes pasado de esta Corte—los términos que ha habido antes de éste desde que se contestó la demanda—que no señalase el caso para juicio, que este asunto lo arreglábamos de un momento a otro, y por eso tardó este asunto en llegar a juicio. Convencido de quo no era posible arreglar el asunto amistosamente, señalamos el caso para juicio.''

Pidió el demandado la eliminación de la declaración del abogado de la demandante y la corte resolvió:

"Se elimina toda la declaración del testigo en cuanto a ofertas de transacción hechas por el señor Cadierno. Lo demás queda."

Tomó excepción la demandante y el testigo continuó:

"Si me permite la Corte. He querido hacer constar simplemente que el señor Cadierno reconoció repetidas veces que el solar que él vendió, el solar núm. 1 de la manzana K, tal como se describe en la escritura y que él vendió a la señora Emanuelli, no era de él; que a él se lo vendió una persona que no tenía derecho a vendérselo. . . . El señor Cadierno, en el momento en que hablaba conmigo, admitió que ese solar que él vendió no era de él, pero no que lo supiera en el momento que lo vendió; y que él lo había pasado tal como se lo habían pasado a él."

El demandado Cadierno declaró que desde el 19 de marzo de 1923 en que adquirió la finca de la que segregó y vendió los solares en cuestión no fué molestado en su posesión. Las reclamaciones de la demandante fueron a fines o a mediados del 1932. En la única entrevista que tuvo con la demandante ésta le suplicó que le comprara los solares porque estaba necesitada de dinero. No recuerda cuándo fué "pero quizá haya sido por el año '29 o algo así." Dice que "estaba en posesión del solar por un documento público" y pagó sus contribuciones mientras fué suyo.

Llamado a declarar por la parte demandante, y a la pregunta: "¿No compró usted, señor Cadierno, el solar núm. 1, letra K, a que se refiere este pleito, por escritura núm. 13 de 20 de abril de 1933, a la señora Beecher?" contestó: "Yo he comprado un solar en una parcela de terreno en la finca Buena Vista, en la Notaría de Don Francisco Ramírez de Arellano. No recuerdo en este momento qué número es el solar, ni qué dimensiones tiene ni nada de eso."

Se objetó que se trataba de probar un hecho ocurrido con posterioridad a la demanda y el juez sostuvo la objeción así: "Éste es un hecho posterior a la demanda que no podría ser objeto de prueba."

Tomó excepción la demandante y continuó su interrogatorio con el siguiente resultado:

"A.—¿Quién posee ese solar hoy?—¿El solar núm. 1, letra K, a que se refiere esta demanda, o sea el solar que usted le vendió a la señora Emanuelli? ¿Está hoy en poder de usted o de ella?—T.—Yo no sé si ella lo habrá vendido.—A.—¿Pero usted no está en posesión de él?—T.—Yo no sé si ella lo habrá vendido.—A.—No le pregunto eso. Mi pregunta es bien clara y usted debe contestarme categóricamente. ¿Usted está en posesión de ese solar, o no está en posesión? —T.—No lo sé realmente; yo creo que no.—A.—¿Usted no sabe si está en posesión entonces?—T.—No, señor, no tengo la seguridad.— A.—¿No tiene la seguridad?—T.—No, señor, no la tengo.—A.—¿De modo que podría ser verdad que usted estuviera en posesión de ese solar?—T.—Podría y no podría ser verdad.—A.—¿Entonces podría ser que usted estuviera en posesión de una cosa sin saberlo?—T.—Sí, señor, porque como uno tiene tantas cosas. . . . —Dte.—Nada más, señor Juez."

En su relación del caso y opinión el juez de distrito dice, en parte, lo que sigue:

"Así mismo aparece de la prueba, (certificación del Registrador de la Propiedad de 20 de octubre de 1933, Exh. *E* de la demandante), que un solar de los que se describen en la demanda aparecía previamente inscrito en el registro a nombre de Eva Lytle Beecher, si bien con una cabida algo distinta a la reseñada al solar letra *A*, coincidiendo en sus colindancias con el mismo.

"La teoría de la parte demandante es que no habiéndose entregado la cosa vendida, procede la rescisión del contrato, toda vez que siendo el contrato de compraventa una obligación bilateral o recíproca que impone al vendedor la obligación de entregar la finca objeto de la venta, y al comprador la obligación de pagar el precio convenido, no hay contrato, o por lo menos, el celebrado debe ser rescindido por el no cumplimiento coactivo de la obligación que tenían los demandados de entregar la finca.

"Los pedimentos que se hacen en la demanda son los siguientes: —Que declaremos resuelto el contrato de compraventa, y por lo tanto, se ordene la devolución a la demandante del precio de la compra de los solares con más los intereses correspondientes, además de una suma por daños y perjuicios y las costas del procedimiento. Como se ve claramente, la acción que se ejercita en este caso es una acción resolutoria. . . . La prueba revela claramente, ya por los tér-

minos de la escritura de venta, o ya por la admisión personal de la demandante en la escritura de disolución de bienes gananciales, que ella estaba en posesión de los solares. Como dice bien la parte demandante, se trata de un caso de doble venta, y de acuerdo con la ley, la propiedad pertenece en casos de esta naturaleza, al que antes la haya inscrito en el registro; pero esto no quiere decir que el segundo adquirente quede huérfano de su derecho, porque ya la misma ley le reconoce el camino o remedio para obtener la reparación a que tuviere derecho, toda vez que el vendedor siempre asume la obligación de la evicción y saneamiento de los bienes inmuebles que venda.

"Yendo ahora a la cuestión principal que levanta la demandante, o sea, proponiendo la resolución del contrato, tenemos que decidir que, a nuestro juicio, se trata en este caso de un contrato consumado, y perfecto, y por consiguiente, no procede la acción resolutoria. Dice la ley que los contratos válidamente celebrados pueden rescindirse, y señala así mismo los casos en que tal rescisión es autorizada; pero también establece la ley de modo expreso que la acción de rescisión es subsidiaria y que no puede ejercitarse sino cuando el perjudicado carece de otro remedio legal que le proporcione reparación del daño causado. Entre los casos de rescisión de contrato que autoriza la ley, no está expresamente especificado el caso que es objeto del presente litigio. Solamente hemos encontrado un caso que tenga alguna analogía con el presente, y es el de *López* v. *Lizardi,* reportado al tomo 27 D.P.R. 755. En este caso se establece la doctrina de que cuando se otorga una escritura de compraventa, existe la presunción *juris tantum* de entrega de la cosa vendida; que generalmente la presunción es la realidad, y si en la realidad surge un caso contrario, la entrega simbólica reconocida en el segundo párrafo del artículo 1365 del Código Civil no decide finalmente la cuestión. Análoga doctrina la establece también el Tribunal Supremo en el caso de *Ferry* v. *Alomar,* 15 D.P.R. 752. No tenemos prueba alguna de que la demandante haya sido perturbada en la posesión de la finca adquirida, salvo las manifestaciones que se hicieron de que alguien quitó el signo o anuncio que de la venta de la finca se colocó en la misma. Quién haya podido ser el autor de esto, no surge de la prueba; tampoco aparece de la misma que aparte de esta circunstancia haya habido un acto ostensible de perturbación en la posesión, ni tampoco de que exista fundado temor de ser perturbada por medio de una acción judicial. De suerte que, siendo el contrato de compraventa realizado entre las partes, uno perfectamente consumado, no son aplicables los preceptos del artículo 1242 y si-

guientes del Código Civil, aunque hacemos reserva expresa de que de acuerdo con el mismo código, pueden surgir otras relaciones entre las partes, como son las que se derivan de la obligación que el vendedor tiene de responder siempre de la evicción y saneamiento de la cosa vendida, cuando esto llegue a ocurrir.

"En cuanto a la segunda. cuestión que levanta la parte demandada. . . a saber: que la acción está prescrita a tenor de lo que preceptúa el artículo 1251 del Código Civil de Puerto Rico, tratándose, como se trata en este caso, del ejercicio de una acción rescisoria, el artículo 1251 del Código Civil dispone que la acción para pedir la rescisión solamente dura cuatro años. De conformidad con la prueba practicada, el contrato de compraventa fué otorgado en el mes de febrero del año 1927, y la demanda original de estos procedimientos fué radicada en 31 de marzo de 1933, esto es, mucho después de transcurridos los cuatro años que señala la ley. Un simple cálculo aritmético nos lleva a la conclusión de que ha transcurrido con exceso el término estatutario. No hay alegaciones ni prueba alguna de que la prescripción haya podido interrumpirse; por el contrario, aparece que las gestiones hechas por el demandado Cadierno lo fueron después de presentada la demanda, según la propia prueba de la demandante. Estamos plenamente convencidos de que existiendo, como existe, una doble inscripción, la demandante puede en su oportunidad acogerse al remedio que la ley le señala para la defensa de sus intereses; pero ni las alegaciones ni la prueba, justificarían una sentencia a favor de la demandante declarando rescindido o resuelto un contrato ya perfeccionado desde hace más' de seis años.''

No conforme la demandante, apeló para ante este Tribunal. Señala en su alegato tres errores cometidos, a su juicio por la corte sentenciadora, al decidir que por haber tomado posesión del solar vendídole, está impedida la demandante de ejercitar su acción, al confundir la acción resolutoria ejercitada con la rescisoria y al declarar prescrita la acción.

La acción rescisoria, según Escriche, es aquélla que tiene por objeto la invalidación de alguna obligación, contrato, testamento y demás actos que pueden constituir éstas por haber intervenido dolo, violencia física o moral o perjuicio irrogado a un menor de edad, y resolutoria es la que tiene por objeto la invalidación de la obligación contraída, repo-

niendo las cosas en el estado que tenían antes de otorgarse aquéllas. 1, Escriche, Diccionario Razonado de Legislación y Jurisprudencia, 194.

La que se ejercita en este caso no es una acción rescisoria, sino resolutoria, tal como la tituló desde un principio la demandante. Surge a virtud de lo dispuesto en los artículos 1334, 1350, 1389, 1395, y 1077 del Código Civil, ed. 1930, que prescriben:

"Artículo 1334.—Por el contrato de compra y venta uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente.

"Artículo 1350.—El vendedor está obligado a la entrega y saneamiento de la cosa objeto de la venta.

"Artículo 1389.—El comprador está obligado a pagar el precio de la cosa vendida en el tiempo y lugar fijado por el contrato.

"Si no se hubieren fijado, deberá hacerse el pago en el tiempo y lugar en que se haga la entrega de la cosa vendida.

"Artículo 1395.—La venta se resuelve por las mismas causas que todas las obligaciones, y además por las expresadas en los capítulos anteriores, y por el retracto convencional o por el legal.

"Artículo 1077.—La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a los artículos 1247 y 1250 y las disposiciones de la ley hipotecaria."

■■■ ¿Cumplió el vendedor en este caso con la obligación de entregar al comprador la cosa que vendiera? Hemos visto que la corte sentenciadora contesta la pregunta en la afirmativa. Se basa en el artículo 1351 del Código Civil, ed. 1930, que dispone:

"Artículo 1351.—Se entenderá entregada la cosa vendida cuando se ponga en poder y posesión del comprador.

"Cuando se haga la venta mediante escritura pública, el otorgamiento de ésta equivaldrá a la entrega de la cosa objeto del contrato, si de la misma escritura no resultare o se dedujere claramente lo contrario.''

Aquí la venta se hizo por escritura pública y en la escritura consta lo que sigue: "Bastando este otorgamiento en señal de formal toma de posesión.''

Para todos los efectos legales en un caso normal, eso es bastante. A virtud de la toma simbólica de posesión, queda convertido el comprador en dueño, si cumple, por supuesto, a su vez con sus obligaciones.

En el caso de *Ferry* v. *Alomar,* 15 D.P.R. 752, 755, esta corte por medio de su Juez Asociado Sr. Figueras, dijo:

" . . . la tradición simbólica que se constituye por medio del otorgamiento de la escritura de venta y que tiene su precedente en la ley 8ª. título 30 de la partida 3ª., está excepcionada sólo cuando de la misma resulte o se deduzca de un modo claro que la cosa vendida no se ha querido entregar por el vendedor que es el obligado a cumplir con esta exigencia de la ley.

"El Código Civil Revisado en sus artículos 1365, 1366 y 1367 ha ido enumerando las distintas maneras como la cosa puede ser entregada. En todas ellas se puede apreciar que lo que da vida legal al acto de la entrega es esencialmente la determinación de la voluntad de las partes de entregar y recibir respectivamente. Cuando la cosa se pone en poder y posesión del comprador; cuando se emplea un símbolo cuyo normal y ordinario simbolismo consiste en suponer la entrega; cuando hay un acuerdo expreso sobre este punto, o cuando sabiendo el valor que la ley da al otorgamiento de la escritura, es ésta otorgada sin salvedades ni restricciones, hay que entender que ha habido voluntad de entregar y que la cosa ha sido entregada. Trátase al cabo de la interpretación de un acto que presupone una determinada posición de la voluntad.''

En el de *López* v. *Lizardi,* 27 D.P.R. 755, 756, la corte colocando el alcance de la entrega por medio de escritura dentro de sus justos límites, se expresó así:

"Estamos conformes con el apelante en que, de acuerdo con el artículo 25 de la Ley de Evidencia, habiéndose pactado en el contrato expresamente lo relativo a la entrega, debe entenderse que el contrato contiene todas las condicions relativas a la misma. Pero no lo estamos en las consecuencias absolutas que deduce de lo dispuesto por el legislador en el precepto del Código Civil que dejamos citado. (Art. 1365.) Otorgada la escritura,, existe la presunción *juris tantum* de la entrega. En el orden normal de las cosas, la presunción es la realidad misma. Pero si surge un caso contrario en la realidad, la entrega simbólica reconocida en el segundo párrafo del artículo 1365 del Código Civil, no decide finalmente la cuestión."

Y aquí la evidencia practicada produce la convicción de que de hecho el solar que da a la carretera jamás le fué entregado por el demandado a la demandante, ni ésta tomó posesión material ni disfrutó de él en modo alguno, motivo por el cual no podemos estar conformes con el juez sentenciador en que, en cuanto a ese solar se refiere, se trate de un contrato verdaderamente consumado y perfecto. En cuanto al otro solar la realidad está en armonía con la presunción.

■ Pero hay más, no sólo no entregó el demandado el solar de que se trata a la demandante si que estaba en la imposibilidad de entregárselo ya que vendió una cosa que no le pertenecía.

Manresa, refiriéndose en sus Comentarios al artículo 1445 del Código Civil Español, igual al 1334 del nuestro, ed. 1930, a la venta de cosa ajena, dice:

"Respecto a la cosa ajena nada dice nuestro Código. Desde luego, no es válida, porque la venta representa una transmisión de derechos, y mal puede nadie transmitir lo que no tiene. Lo que ocurre, es que esa venta puede llegar a producir efectos mediante la prescripción, y es porque entonces se transmite por el vendedor el verdadero derecho que tiene sobre la cosa, que es el de posesión sin dominio.

"Atendiendo a esto, y a la doctrina de la evicción, que garantiza al comprador de cosa ajena, varios Códigos y varios autores admiten como válida la venta de cosa ajena. Pero a nuestro modo de ver, la obligación del saneamiento en caso de evicción, viene pre-

cisamente a poner de relieve la nulidad más o menos encubierta de esa clase de ventas, imponiendo al vendedor el deber de indemnizar. La ley que admite el derecho de posesión enfrente del derecho del dueño, y supone la buena fe mientras no se pruebe lo contrario, lo que hace es aceptar la posibilidad de que se venda una cosa ajena en la creencia de ser propia, y dejar el acto abandonado a las consecuencias que puedan después sobrevenir.

"La jurisprudencia patria ha mostrado un criterio un tanto indeciso en orden al problema de la venta de cosa ajena. La tesis de su validez está confirmada incidentalmente por las Resoluciones de la Dirección de los Registros de 6 de diciembre de 1898 y 2 de septiembre de 1902, que declaran no es esencial al contrato de venta que el vendedor sea dueño de la cosa vendida, y también por la sentencia del Tribunal Supremo de 31 de enero de 1921. En cambio, parecen inclinarse a la solución contraria la sentencia de 26 de junio de 1924, que entiende que siendo de ajena pertenencia la cosa que ofrezca el vendedor, faltan los elementos reales necesarios para la perfección del contrato, y la de 20 de noviembre de 1925, que hace la afirmación de que el error que consiste en suponer cosa propia del vendedor la que es ajena, invalida el consentimiento." 10 Manresa. Comentarios al Código Civil Español, pág. 24.

Y Scaevola en el tomo 20 de sus Comentarios al Código Civil, p. 687 y siguientes, se expresa, en parte, como sigue:

"Distinguieron los romanos entre el hecho ajeno y la cosa ajena, y aunque reputaron nula toda estipulación sobre el hecho de otro, así porque el consentir es subjetivo y ha de referirse a la propia voluntad, como porque de otro modo la validez argüiría el secuestro de la libertad de un tercero sin acto suyo, concedieron cierto valor a la venta de la cosa de un extraño, aunque siempre en contemplación a que éste podía consentir a su vez sobre el objeto.

.    .    ..    .    .    .    .    .    .    .    .

"El Código de las Partidas puntualizó hasta con excesiva prolijidad el caso que nos ocupa: *Cosa agena, vendiendo un ome a otro valdra la vendida*. Repite, como es visto, la regla romana; pero el comprador, o sabe que la cosa no pertenece al vendedor, o cree que es de éste; si lo primero, no puede repetir el precio aunque la reivindique su dueño; si lo segundo, el vendedor debe, no sólo pechar el precio, más todos los daños y menoscabos que se produjeran con ocasión de dicha venta. (Partida 5ª., tit. V, ley 19.)

.    .    .    .    .    .    .    .

"Lo mismo en las leyes de Partidas que en las romanas, por obra de un mecanismo artificioso encontramos la posibilidad de transmitir a título oneroso o gratuito la cosa de otro, y todavía en el Código español, por reminiscencias de aquellos Derechos, se ha legislado sobre el legado de cosa ajena, de lo cual dan cumplido testimonio los artículos 861 y 875; mas si se analizan estas transmisiones, se adquirirá la plena certeza de que entre la venta y el legado de la cosa propia y de la cosa ajena, hay una verdadera sima que las separa. .      .      .      .      .      .      .      .      .

"¿Dónde, pues, reside la perfección de un modo transmisivo que abre franco paso al derecho del dueño mediante la acción vindicatoria? Si el modo no autoriza la sustitución del dueño, digamos con plena convicción que la *venta* de la cosa de otro en su propio y genuino sentido de modo transmisivo, es esencialmente nula y no puede constituir objeto lícito de contrato de compraventa.''

■ Tampoco podemos estar conformes con el juez sentenciador en que la acción—siempre en cuanto al solar que da a la carretera—haya prescrito. Se trata de un contrato inexistente ya que nunca tuvo ni pudo tener realidad cumplida, no siéndole aplicable por tanto la regla contenida en el artículo 1251 del Código Civil, ed. 1930.

Por lo que respecta al solar núm. 2, aun cuando hemos tenido algunas dudas sobre si debe seguir la suerte del núm. 1, ya que el propósito de la compra por parte de la demandante fué el de fabricar su casa residencial formando de ambos solares una sola finca, dada la naturaleza de la acción ejercitada y el tiempo en que lo fué, no creemos que pueda dictarse sentencia declarando la resolución de su venta, y en cuanto a las otras reclamaciones tampoco procede dictar sentencia favorable a la demandante por falta de evidencia específica y convincente.

*Por virtud de lo expuesto debe modificarse la sentencia recurrida declarando la demanda con lugar en cuanto a la resolución del contrato de venta del solar núm. 1, condenando al demandado a devolver a la demandante la suma de $2,240 con intereses legales a partir del 9 de junio de 1928, fecha*

*en que fué finalmente satisfecha en su totalidad dicha suma, quedando subsistente en todo lo demás.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.