ODILIO SERRANO RAMÍREZ, por sí y en representación de su hija menor MILAGROS SERRANO, demandante, *v.* CLÍNICA PEREA, INC., DOCTOR JUAN FERNÁNDEZ, DOCTOR PEDRO PÉREZ PÉREZ, DOCTOR LUIS E. CUMMINGS, demandados, DOCTOR LUIS E. CUMMINGS, demandante contra tercero y recurrente, *v.* RESERVE INSURANCE COMPANY, tercera demandada y recurrida.

*Número:* R-78-326     *Resuelto:* 23 de febrero de 1979

478

*Víctor E. Báez,* abogado del recurrente; *Juan Lorenzo Rodríguez,* abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Requiere este pleito el examen del efecto de una aseveración falsa dentro del contexto de la cláusula de contribución al riesgo en el contrato de seguro por práctica negligente de la medicina.

El doctor Luis E. Cummings, demandado, tercero demandante y recurrente, llenó un impreso para la obtención de una póliza de responsabilidad profesional en que se le preguntaba:

"5. Has a claim or suit on account of any alleged malpractice, error, or mistake ever been brought against you?"

El doctor Cummings contestó en la negativa. La contestación era falsa. Sin conocer este hecho, la Reserve Insurance Company, tercera demandada y recurrida, expidió la póliza solicitada por un período de tres años a partir del 15 de enero de 1975.

El 28 de febrero de 1976, once días después de practicársele una operación en que el doctor Cummings había participado como anestesiólogo, falleció una paciente. El cónyuge viudo y su hija menor demandaron a la clínica y a tres médicos, entre ellos al doctor Cummings. Luego que el doctor Cummings le notificó la demanda a la compañía aseguradora, esta descubrió que, a raíz de la intervención del doctor Cummings como anestesiólogo en una operación quirúrgica en 1972, este fue objeto de una reclamación, transigida con la autorización del Tribunal Superior, por estar envuelto un incapaz, por la suma de sesenta y tres mil dólares. El doctor Cummings y la Reserve Insurance Company estipularon ante el Tribunal Superior que de haber tenido la compañía conocimiento de estos hechos no hubiera expedido la póliza. La compañía negó en consecuencia responsabilidad alguna bajo la póliza y rescindió la misma. El Tribunal Superior sostuvo la defensa afirmativa que la compañía interpuso a estos fines respecto a la demanda contra tercero y dictó sentencia parcial a favor de la Reserve Insurance Company. El doctor Cummings recurre ante nos.

Antes de considerar la cuestión más importante que encierra este recurso discutamos algunos planteamientos adjetivos que formula el recurrente.

1. *El argumento de la indisputabilidad del contrato.*

El recurrente se ampara en el Art. 11.270 del Código de Seguros, 26 L.P.R.A. sec. 1127, enmendado por la Ley Núm. 32 del 10 de mayo de 1976. Dispone así el artículo en su versión actual:

"(1) El asegurador no podrá cancelar un contrato de seguros después de haber estado en vigor por un período de se-

senta (60) días o más, excepto por la falta del pago de prima y por aquellos fundamentos que se especifican en la póliza . . . ."

■ No le asiste razón al recurrente. En primer término, no se trata aquí de la cancelación de un contrato sino de su rescisión. El Art. 11.270 es inaplicable a la situación de autos. En segundo término, la enmienda que sufrió este artículo, que es la que protegería al recurrente, no tiene efecto retroactivo. Ambas normas de derecho se discuten ampliamente en *Casanova* v. *P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1978).

■ Tampoco le es dable al facultativo recurrente invocar el Art. 13.050 del Código de Seguros, 26 L.P.R.A. sec. 1305, donde se dispone que:

"Deberá haber una disposición al efecto de que la póliza será incontestable después de haber estado vigente, en vida del asegurado, por un período no mayor de dos años a partir de la fecha de su expedición, excepto . . . ."

En Puerto Rico esta cláusula de indisputabilidad se aplica únicamente a los contratos de seguro de vida, según se desprende del hecho de que la misma forma parte tan solo del capítulo del código referente a tal tipo de pólizas. Este patrón estatutario, en que la aplicación de la cláusula se limita a determinados seguros, es el que rige usualmente en otras comunidades. 18 *Couch on Insurance*, 2ª ed., sec. 72.17, pág. 52.

2. *La devolución de las primas.*

Señala el doctor Cummings que erró el tribunal al declarar sin lugar su demanda contra tercero "toda vez que a la fecha en que la recurrida le negó cubierta al recurrente no le había devuelto las primas pagadas por él."

■ Es inmeritorio el planteamiento. Nuestro Código de Seguros no trata el tema de la resolución de este género de contratos y, después de la enmienda que sufrió el Art. 11.270 en 1976, a la que nos referimos en el apartado anterior, tam-

poco el de su rescisión. ([1]) En tal caso hay que acudir a nuestro Código Civil como cuerpo jurídico supletorio. *Casanova v. P.R.-Amer. Ins. Co.*, supra. Ni el Art. 1247 del Código Civil, 31 L.P.R.A. sec. 3496, referente a la acción rescisoria, que es la que invoca la compañía aseguradora, ni el Art. 1077 del mismo Código, 31 L.P.R.A. sec. 3052, que versa sobre la acción resolutoria, imponen el requisito de la devolución previa de las primas. Véase: L. Benítez de Lugo Reymundo, *Tratado de Seguros*, ed. Reus, Madrid, 1955, Vol. 1, pág. 429 y ss. Debe señalarse, además, que la compañía devolvió varias primas, consignó las otras y ha estado dispuesta en todo momento al pago correspondiente de intereses, según lo requiere la acción rescisoria que interesa ejercer. ([2])

3. *Las declaraciones incorrectas y la cláusula de contribución al riesgo.*

Aquí llegamos al nervio de este litigio. El Art. 11.100 del Código de Seguros, 26 L.P.R.A. sec. 1110, provee:

"Todas las declaraciones y descripciones en una solicitud de póliza de seguros o en negociaciones para la misma, hechas por el asegurado o a su nombre, se entenderá que son representaciones y no garantías. La impostura, las omisiones, el encubrimiento de hechos y las declaraciones incorrectas no impedirán el cobro con arreglo a la póliza, a menos que:

(1) Sean fraudulentos; o

(2) Que sean materiales [*sic*], bien para la aceptación del riesgo, o para el peligro asumido por el asegurador; o

(3) El asegurador de buena fe no hubiera expedido la póliza, no hubiera expedido la póliza por una cantidad tan grande o no hubiera provisto cubierta con respecto al riesgo resultante en la pérdida, de habérsele puesto en conocimiento de los hechos verdaderos, como se requería en la solicitud para la póliza o de otro modo.

---

([1])Para la diferencia entre la acción rescisoria y la resolutoria, véase: *Emanuelli v. Cadierno*, 50 D.P.R. 134 (1936).

([2])No hacemos pronunciamiento alguno, por innecesario a la decisión de esta controversia, sobre el efecto de la devolución tardía de las primas en casos de cancelación de pólizas.

Cuando el solicitante incurra en cualquiera de los actos enumerados en los apartados (1), (2) y (3) de esta sección se impedirá el cobro solamente cuando el acto u omisión de que se trate hubiere contribuido a la pérdida objeto de la causa de acción."

Para precisar el significado de este artículo hay que repasar su historial y propósito.

■ El contrato de seguros fue, tanto en los países donde rige el derecho civil como en los que priva el derecho común, producto del desarrollo del comercio marítimo y la *lex mercatória*. (³) En el contrato de seguro marítimo inglés se creó una distinción, que luego se extiende a otros seguros e influye en el derecho correspondiente norteamericano, entre lo que nuestro código llama, en el Art. 11.100 citado, "representaciones" y "garantías". Una "garantía" era una condición expresa del contrato. De no ser cierta literalmente, aunque no fuese pertinente al riesgo y aunque el solicitante de la póliza desconociese el error, la póliza era nula. Una "representación" era en cambio una afirmación que no constituía parte del contrato. Aunque indujese a la otra parte a celebrar el acuerdo, no anulaba la póliza a menos que fuese sustancialmente incorrecta y pertinente a la estimación del riesgo. Por tiempo considerable los aseguradores intentaron valerse de esta distinción para convertir toda aseveración en una garantía y así reducir el ámbito de su responsabilidad. Ehrenzweig, Sr. y Kessler, *Misrepresentation and False Warranty in the Illinois Insurance Code*, 9 U. Chi. L. Rev. 209, 210 *et seq.* (1942) ; Vance, *The History of the Development of the Warranty in Insurance Law*, 20 Yale L.J. 523 (1911) ; Patterson, *Warranties in Insurance Law*, 34 Colum. L. Rev. 595 (1934) ;

---

(³)Para la historia de su desenvolvimiento en España, que es donde se reglamenta por primera vez, en 1435, el contrato de seguros, véase: L. Benítez de Lugo Reymundo, *Tratado de Seguros*, supra, pág. 76 *et seq.* Para la historia de esta institución en Inglaterra, véase: 8 *Holdsworth's History of English Law*, 2da ed., pág. 273 *et seq.* y pág. 294 *et seq.*

Magaw, *Representations in the Law of Life Insurance*, 11 Temp. L.Q. 463, 466 (1937).

Tanto en el derecho inglés como en el norteamericano se ha estado superando esta antigua tendencia. Hoy en Gran Bretaña el asegurado o el asegurador pueden anular una póliza de establecerse que la otra parte ha efectuado una declaración falsa, de buena o mala fe, sobre un hecho pertinente o ha ocultado la existencia de tal hecho. 25 Halsbury's *Laws of England*, 4ª ed., 1978, pág. 201 *et seq.* En Estados Unidos se han ido tornando en varios estados las "garantías" en "representaciones." (⁴) De ahí es que deriva y tal es el significado de la frase del Art. 11.100 de nuestro Código que , decreta que "Todas las declaraciones y descripciones en una solicitud de póliza de seguro o en negociaciones para la misma, hechas por el asegurado o a su nombre, se entenderá que son representaciones y no garantías."

Hasta la aprobación de la Ley Núm. 77 de 19 de junio de 1957, contentiva del Código de Seguros, el Art. 299 de nuestro Código de Comercio disponía:

"Será nulo todo contrato de seguro:

1º Por la mala fe probada de alguna de las partes al tiempo de celebrarse el contrato.

2º Por la inexacta declaración del asegurado, aun hecha de buena fe, siempre que pueda influir en la estimación de los riesgos.

3º Por la omisión u ocultación, por el asegurado, de hechos o circunstancias que hubieran podido influir en la celebración del contrato."

Puede verse que, con muy ligeras variaciones, el Código Español de Comercio de 1885, extendido a Puerto Rico en 1886,

---

(⁴)Véanse: Ala. Code tit. 28A, sec. 320; Ariz. Rev. Stat. sec. 20-1109; Ark. Stat. Ann. sec. 66-3208; Del. Code Ann., tit. 18, sec. 2711; Fla. Stat. Ann. sec. 627.409 (West); Ga. Code Ann. sec. 56-2409; Idaho Code sec. 41-1811; Ky. Rev. Stat. sec. 304.14-110; Me. Rev. Stat. Ann., tit. 24-A, sec. 2411; Md. Ann. Code art. 48A, sec. 374; Mont. Rev. Codes Ann. sec. 40-3713; Okla. Stat. Ann. tit. 36, sec. 3609 (West); S.D. Codified Laws, sec. 58-11-44; Utah Code Ann. sec. 31-19-8; W. Va. Code sec. 33-6-7.

se asemejaba a lo dispuesto en el Art. 11.100 del actual Código de Seguros, excepto en lo que atañe al último párrafo, que es el que incluye la debatida cláusula de contribución al riesgo.

El anteproyecto de nuestro Código de Seguros fue redactado por Robert D. Williams, autor de los anteproyectos para Arizona y Kentucky, entre otros. [5] A excepción del último párrafo, el Art. 11.100 de nuestro código se fundó en estos patrones sin advertir, en lo que toca al asunto que nos ocupa, que el Art. 299 del Código de Comercio, derogado por el de Seguros, trataba el asunto en forma abarcadora y que la diferencia entre "representaciones" y "garantías" era entonces desconocida en Puerto Rico.

El anteproyecto presentado a las Cámaras (el P. de la C. 85) no contenía inicialmente la cláusula de contribución al riesgo. Esta se añadió, mediante la adición del último párrafo al Art. 11.100, a sugestión del señor George W. Goble, asesor de la Asamblea Legislativa. El propósito de la enmienda, según se desprende del historial legislativo, [6] fue evitar la interpretación de que una declaración falsa sobre un asunto pertinente a la aceptación del riesgo pueda anular una póliza en aquellos casos en que el hecho incierto u ocultado no está vinculado en forma alguna al daño sufrido. Un ejemplo ofrecido por Goble es el siguiente. Si el solicitante de una póliza de vida, con cubierta de muerte accidental, declara falsamente que no tiene padecimientos renales, lo cual es de importancia para la estimación del riesgo, y luego lo arrolla un automóvil, la falsedad cometida no debe impedir el cobro de la póliza. [7] Vemos así que el objetivo del último

---

[5] 9 *Diario de Sesiones de la Asamblea Legislativa,* Tomo III, 1957, pág. 1418.

[6] *Vista Pública ante el Subcomité Especial del Comité de Hacienda del Senado para el estudio del proyecto que establece un nuevo Código de Seguros para Puerto Rico,* 18 de julio de 1956, documento mecanografiado, pág. 42 (ponencia del señor George W. Goble).

[7] *Ibid.*

párrafo es ampliar el concepto de pertinencia. Se anula la póliza cuando la aseveración falsa o la información omitida no sólo es pertinente a la apreciación del riesgo sino también a su ocurrencia. La cláusula de contribución al riesgo requiere un nexo, cuya naturaleza puede variar de por fuerza, según el tipo de seguro, entre la declaración inexacta y la pérdida objeto de la acción.

Muy pocos estados de la Unión Americana han adoptado la doctrina de la contribución al riesgo[8] y entre estos únicamente Nebraska la aplica, como Puerto Rico, a toda clase de seguros. La doctrina ha sido objeto de seria crítica, especialmente por las dificultades que provoca el uso del concepto de causalidad en determinados contextos. E. W. Patterson, *Essentials of Insurance Law*, McGraw-Hill Book Co., N.Y., 2ª ed., 1957, sec. 72 *et seq.* y sec. 83 *et seq.*

La cláusula de contribución al riesgo es desconocida en Inglaterra. Proviene del derecho alemán, E. W. Patterson, *op. cit.*, pág. 355, pero no ha tenido acogida en la generalidad de los países civilistas. España continúa aplicando las disposiciones antes citadas del Código de Comercio, junto a otras de orden supletorio. Aranzadi, *Nuevo Diccionario de Legislación*, Ed. Aranzadi, Pamplona, 1977, Vol. XXII, pág. 136 *et seq.* El derecho francés, que se rige por el Art. 15 de la Ley de 13 de julio de 1930, utiliza principios análogos a los del derecho español. Para el texto de la ley, véase: Dalloz, *Codes et Lois Usuels, Codes d'Audience*, 36ª ed., 1975, apéndice, pág. 477 *et seq.* Véase también: C. Blondel, *Éléments de Droit Civil Appliqué Aux Assurances*, Imp. Desseaux, París,

---

[8] Véanse: Iowa Code Ann. sec. 515.101 (West); Kan. Stat. Ann. secs. 40-418 (seguro de vida), 40-2205 (seguro contra accidente y enfermedad); Mich. Comp. Laws Ann. sec. 500.2836 (seguro contra incendio); Mo. Ann. Stat. secs. 376.580, 377.340 (Vernon) (seguro de vida); Neb. Rev. Stat. sec. 44-358 (disposición general); N.H. Rev. Stat. Ann. sec. 407:4 (seguro contra incendio); R.I. Gen. Laws sec. 27-4-10 (seguro de vida); Texas Ins. Code Ann. arts. 6.14 (seguro contra incendio), 21.16 (Vernon); Wis. Stat. Ann. sec. 209.06 (West).

1959, págs. 167–168. El derecho italiano también se aparta del alemán. G. Ferri, *Manuale di Diritto Commerciale*, 3ª ed., U.T.E., Turín, 1972, pág. 791 *et seq*.

En Alemania, contrario a algunas jurisdicciones norteamericanas, se ha aliviado el problema que entraña en ocasiones la utilización del concepto de la causalidad mediante la imposición del peso de la prueba en hombros del autor de la declaración falsa. E. W. Patterson, *supra*, 357. La aclaración del propósito original de la cláusula puede, a nuestro juicio, cumplir más eficazmente que este mecanismo la función de disipar las dificultades de interpretación de la cláusula en determinadas situaciones.

■ En resumen, la cláusula de contribución al riesgo se desarrolló fundamentalmente para precisar el concepto de pertinencia, para evitar la anulación de pólizas por declaraciones falsas que, aunque significativas para la estimación del riesgo, carezcan de vínculo estrecho con la pérdida ocurrida. El propósito de esta cláusula, al utilizar la frase, no muy feliz, de "contribución a la pérdida", no fue establecer la obligación imposible de probar en todo caso con precisión matemática que la inexactitud u omisión causó o contribuyó al daño. Basta con probar en ciertos tipos de seguros, en que por su naturaleza no puede racionalmente exigirse más, que la falsedad o el acto de encubrimiento por parte del asegurado está íntimamente ligado tanto al proceso de estimar el riesgo como al hecho constitutivo de la pérdida.

4. *Aplicación de la norma al caso presente.*

En el pleito de autos el asegurado declaró falsamente que no se había interpuesto nunca demanda o reclamación alguna contra él por razón de supuesta negligencia o error en el ejercicio de sus funciones profesionales. El doctor Cummings no estaba solicitando que se le expidiese una póliza de seguros contra incendio o de otro género en que la falsedad cometida no jugase un papel esencial. Solicitaba una póliza

que le protegiese precisamente contra reclamaciones por pretendida negligencia profesional. Es incuestionable que la aseveración inexacta que hizo era pertinente para fines de la estimación del riesgo, según quedó demostrado por el hecho de haber estipulado las partes que, de haber conocido el asegurador la situación verdadera, no hubiese expedido la póliza.

▆▆▆ Respecto al nexo con la posible pérdida que pueda sufrir el presunto asegurado debe observarse que el seguro contra negligencia en el ejercicio de la medicina no es exactamente comparable a otros en cuanto al problema que nos ocupa y debe examinarse separadamente, sin que las reglas que sentemos para él tengan por necesidad que regir del mismo modo en cuadros distintos de hechos. ¿Cómo es que puede probarse con absoluta certeza que un primer acto de negligencia fue la causa o contribuyó a la ocurrencia de otro acto separado de descuido o falta de pericia? Consideramos que en estas circunstancias es suficiente establecer, como se ha establecido, la requerida vinculación estrecha entre la declaración falsa de un hecho esencial y la pérdida a que puede estarse expuesto. Quien falsea un dato de tanta significación e importancia para la obtención de un seguro profesional no puede gozar del beneficio de interpretaciones aplicables quizás en otros contextos, pero ininteligibles en el de este recurso. No ha perdido su vitalidad en la controversia bajo análisis el Art. 1217 de nuestro Código Civil, 31 L.P.R.A. sec. 3404, declarativo de la nulidad del consentimiento prestado por error. El asegurador tiene pleno derecho en este caso a la rescisión de la póliza, así como la obligación de restituir las primas, más los intereses de rigor. Art. 1247 del Código Civil, 31 L.P.R.A. sec. 3496.

5. *La existencia o no del deber de investigación por la aseguradora.*

▆▆▆ Hay división de autoridades, fuera del problema de rescisión discutido, sobre si una aseguradora le responde a un

tercero perjudicado por su omisión en investigar prontamente las declaraciones efectuadas en una solicitud para la obtención de una póliza. Véanse, *pro: Barrera* v. *State Farm Mutual Automobile Insurance Company*, 456 P.2d 674 (Cal. 1969); *Fireman's Fund American Insurance Co.* v. *Escobedo*, 145 Cal. Rptr. 785, 789–90 (App. 1978); *State Farm Mutual Automobile Insurance Company* v. *Kurylowicz*, 242 N.W.2d 530 (App. Mich. 1976); *contra:* 7 Couch, *On Insurance 2d*, sec. 35:84, págs. 100–101; 12 Appleman's *Insurance Law and Practice*, sec. 7292.

Estimamos que este aspecto del caso no está debidamente ante nos. La cuestión de que se recurre por el doctor Cummings es únicamente la relativa a si el Tribunal Superior erró al negarle cubierta bajo la póliza. Hemos resuelto que no se cometió el error. El doctor Cummings suscita el problema referente a la ausencia de investigación temprana en este caso, pero éste no es asunto que pueda afectar la vigencia de la póliza y la consiguiente relación entre la aseguradora y el asegurado. Lo que éste afecta es la responsabilidad, si alguna, de la aseguradora frente a los demandantes perjudicados por la negligencia imputada al médico recurrente. Para resolver adecuadamente este problema es imprescindible desfilar prueba sobre múltiples factores, entre ellos, la disponibilidad de la información, su accesibilidad, el costo envuelto y el impacto actuarial y social. Véase: Comment, *Reasonable Investigations and the Financial Responsibility Law—Protecting the Innocent Third Party: Barrera* v. *State Farm Mutual Automobile Insurance Company*, 3 Loy. L. A. L. Rev. 169 (1970). La parte con verdadero derecho e interés en plantear esta cuestión tampoco ha considerado necesario acudir ante nos en esta etapa de los procedimientos. En consecuencia, nos abstenemos de pronunciarnos sobre este problema.

*Por las consideraciones expuestas se confirma la sentencia parcial dictada y se devuelve el caso al Tribunal Superior para procedimientos ulteriores consistentes con esta opinión.*

El Juez Asociado Señor Angel Martín concurre en el resultado.