Ramon Camayd **ZOGBE**, Rosa Feria De Caymad and the Conjugal Partnership Established by Them, Plaintiffs,

v.

**SMA LIFE ASSURANCE COMPANY,** Defendant.

Civ. No. 91–2603CCC.

United States District Court, D. Puerto Rico.

Nov. 18, 1993.

Letvia M. Arza–Goderich, San Juan, PR, Jorge R. Dávila, Guaynabo, PR, for plaintiffs.

Frank Gotay–Barquet, Feldstein, Gelpi & Gotay, Old San Juan, PR, for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This case is before us on defendant's Motion for Summary Judgment filed on May 27, 1993 (docket entry 12). Plaintiffs opposed the Motion on July 12, 1993.[1] This action for breach of an insurance contract arises from defendant's refusal to pay to the beneficiaries the proceeds of a life insurance policy issued to Fernando Camayd Feria, who died of AIDS four months after the policy was issued. Defendant requests judgment in its favor, contending that Camayd Feria withheld information about his medical history which would have affected the company's decision to issue the policy. Plaintiffs argue, however, that the insured did not know of his illness at the time he purchased the insurance. Additionally, they point to the deposition testimony of Mr. José A. Miró, defendant's agent who sold the policy, to show that the application for the policy was filled out by the agent himself during an "agitated conversation" with the insured which was frequently interrupted on a busy day at the decedent's place of business.

Plaintiffs do not dispute that the insured had been hospitalized in Florida for cardiac examination, that he had other medical symptoms and complaints and that he had

---

1. SMA's Motion for Leave to file a Reply (docket entry 17) is GRANTED.

many more recent medical appointments than were included on the form. Rather, they imply that defendant is estopped from rescinding the policy because of the manner and circumstance under which Camayd Feria was "induced" to purchase the policy, the fact that the agent filled out the form, and that defendants were authorized to investigate his health but failed to do so. Additionally, plaintiffs contend that the affidavit of Donald J. Clough, a second vice president who was director of SMA's underwriting department at the time the application was evaluated and approved, is conclusory in nature and is a question of fact for the jury. Clough states that if accurate representations had been made regarding Camayd Feria's medical history the policy would not have been issued or he would have been sent for medical evaluation which would have revealed the true nature of his illness.

■ "As a general rule, an insurer is entitled to rely upon representations as to the applicant's health and prior medical attention and treatment and is not under any duty to question his veracity." 7 *Couch on Insurance 2nd*, § 37.259. The word "misrepresentation" in policies of insurance is taken in the same sense as that in which it is ordinarily used in common speech meaning merely a false statement touching a matter material to the risk.

■ Section 11.100 of the Insurance Code of Puerto Rico, 26 LPRA § 1110, states, in pertinent part:

All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of acts, and incorrect statements shall not prevent a recovery under the policy unless:

(1) Fraudulent; or

(2) *Material either to the acceptance of the risk, or to the hazard assumed by the insurer,* or

(3) The *insurer in good faith would either not have issued the policy,* or would not have issued a policy in as large an amount, or *would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.*

When the applicant incurs in any of the actions enumerated in paragraphs (1), (2) and (3) of this section, the recovery shall only be prevented if such actions or omissions contributed to the loss that gave rise to the action.

(Emphasis ours.) *See generally, Serrano Ramírez v. Clínica Perea, Inc.,* 108 DPR 477 (1979). The undisputed facts of the case clearly support the application of the last paragraph above. There is no question that the omissions were highly relevant and directly related to discovery of the illness which eventually caused Camayd Feria's death.

Thus—

... an innocent misrepresentation will make the policy voidable. That is, the insurer may avoid the contract when it relies on a misrepresentation of a material fact not only where such misrepresentation is fraudulently made, but also even though it is not fraudulently made. Under this view, in cases where the misrepresentation is positive and of a fact actually material, it is not necessary to prove that the representation was fraudulently made, since the materiality of the misrepresentation, and its proven falsity, do away with the necessity of showing actual fraud. Thus a misrepresentation as to a material fact has the force and effect of a positive fraud. It is not necessary that misrepresentations be made with actual intent to deceive; it is sufficient if they are false and relate to matters which increase the risk of loss.

It is immaterial that the insured was not guilty of a moral or conscious wrong in making the misstatement, or made the misrepresentation honestly, or through an innocent mistake.

(Footnotes omitted.) 7 *Couch on Insurance 2d,* § 35:119.

Similarly stated, a material misrepresentation by an applicant for life insurance, in reliance upon which a policy is issued, avoids the policy, regardless of whether

the misrepresentation was made intentionally or through mistake and in good faith, for it results in the assumption by the insurer of a risk different from that which the applicant led it to suppose it was assuming.

(Footnotes omitted.) *Id., supra,* at § 35:121.

This is exactly the issue addressed in the Clough affidavit, upon which plaintiffs would merely hang the label "conclusion of fact for the jury to decide." In this case, Clough was the approving officer at the time the policy was issued and would have actual knowledge of the considerations upon which approval decisions were made. Moreover, plaintiffs have presented no evidence which disputes this.

 Generally, the existence of a misrepresentation does not require that the insurer investigate the representations if it has no reason to doubt the veracity of the representation. *Id.* at § 35.85. Authority to secure medical information does not require that the insurer obtain such information. *Id.*

Similarly, ... an underestimation by the patient of the danger of an affliction does not in fact or law operate to transform serious diseases into trivial ailments for the purpose of excusing the failure of the applicant to disclose such prior consultation and treatment; and where the insured died from such an affliction, the failure to disclose the consultation was material and increased the risk of loss and entitled the insurer to avoid the policy.

Representation on Part II of the Application

1–Insured represented that the last time he consulted any physician was with Dr. Hernández Alvarez in January 1985 for a "fungus in the right foot" with "no reocurrence" (question 4). He also stated that he had no weight loss in the previous year. (Question 12)

A cancellation of a policy will be ordered in equity where the insured made false statements in the application for the policy relative to medical attention and doctors by whom [he] had been treated, such questions being material to the risk and relied upon by the insurer, and it not being necessary to show that they were wilfully made with intent to deceive. *A question in an application for a life policy seeking merely a statement of past occurrences, namely, what hospital or physicians, if any, the insured had consulted, when answered untruthfully and relied upon by the insurer in issuing the policy, renders the policy void under the doctrine of "equitable" fraud even though the misstatement was wholly innocent and made without fraudulent intent.* And where the evidence disclosed that the representations with respect to prior medical treatment and health in an application for a hospital policy were palpably false, recovery thereon would not be permitted regardless of who was responsible for insertion of the false answers in the application, whether it was the agent or the insured.

(Emphasis ours.) (Footnotes omitted.) *Id., supra,* § 37:267.

Camayd Feria died on November 22, 1985, less than four months after submitting his insurance application. A review of the documentation and deposition transcripts supporting the Motion for Summary Judgment reveals the many discrepancies between what was included in the application and the insured's actual medical history:

Facts Omitted from Application

1–The insured had also consulted Dr. Hernández on April 23, 1985; June 26, 1985; July 9, 1985 and August 1, 1985. He had been losing weight and was weak and Dr. Hernández advised him about the risks of AIDS during the April visit and told him to have tests for it done. He was suffering from a Monila infection. By the June visit the oral moniliasis was "full-grown," and he was continuing to lose weight. By the August visit he had seborrhea of the right earlobe.[2]

2. June 5, 1992 deposition of Dr. Héctor Hernández Alvarez. TR. pp. 33–48.

474

| Representation on Part II of the Application | Facts Omitted from Application |
|---|---|
| 2–Insured represented that he had never had, been told he had or been treated for any disorder of the heart or blood vessels during the previous ten years. (Question 5a) | 2–The insured "had a heart condition .. he was hospitalized in 1981 in Florida, in Miami. He went there because [of] some arrythmias ... I have a rule out and a page from these doctors with a summary of the cardiac findings on Fernando."[3] |
| 3–Camayd Feria represented that during the last ten years he had never been, been told he had, or been treated for venereal disease. | 3–Camayd was treated venereal disease by Dr. Gaspar Encarnación in 1976 and again in 1979.[4] Dr. Carlos León Valiente diagnosed the insured as having syphilis in December 1984.[5] |
| 4–Camayd Feria indicated that he had a regular check-up with Dr. Agostini in the past five years, at which he had a CBC, SMA 20, and chest X-ray, with normal results. (Question 6) | 4–The insured did not disclose that in July 1985 Dr. Agostini ordered a test for syphilis, chemistry profile, electrocardiogram; tests for thyroid, and lupus, as well as mononucleosis, after Camayd Feria informed him that he was experiencing fevers at night.[6] |
| 5–The insured represented that he had not been a patient or outpatient in a hospital or other medical facility in the previous five years. (Question 6) | 5–Camayd Feria had been hospitalized in Miami in 1981 or 1982. Copies related to medical records from a group cardiologists there were in Dr. Agostini's possession on the date of his deposition.[7] |
| 6–It was represented that Camayd Feria was not under treatment, observation or taking any medication at the time he applied for the policy. (Question 7) | 6–Dr. Agostini had referred Camayd Feria to Dr. Carlos León Valiente for consultation *about his night fevers, the previous week.*[8] |

We must specifically note that the cause of death listed on the certificate was cardiac arrest due to AIDS. Thus a strong relationship exists between the information omitted and the true nature of the condition which resulted in the insured's demise. That is, the omitted information resulted in a misrepresentation of the risk that the insurer was assuming by issuing the policy. In these circumstances, under section 11.100 of the Insurance Code, recovery may be barred.

For the above stated reasons, we find that the defendant was not adequately apprised of information from which it could determine the true nature of the risk it was assuming, and, therefore grant its motion to dismiss.

SO ORDERED.

### JUDGMENT

For the reasons stated in our Opinion and Order issued on this date, defendant's Motion for Summary Judgment is GRANTED and this action is DISMISSED.

SO ORDERED AND ADJUDGED.

3. Transcript p. 51, May 21, 1992, Deposition of Dr. Luis Agostini.

4. *Transcript generally,* pp. 24–50, June 12, 1992, Deposition of Dr. Gaspar Encarnación.

5. Transcript pp. 31–33, June 10, 1992, Deposition of Dr. Carlos León Valiente.

6. Deposition of Dr. Agostini, Transcript, *supra,* pp. 45–51.

7. Deposition of Dr. Agostini, *supra,* pp. 54–56.

8. Deposition of Dr. Agostini, *supra,* pp. 58–61.